In Equity.

## W. R. Lynn Shoe Company

*vs.*

## The Auburn-Lynn Shoe Company.

### Androscoggin.    Opinion December 19, 1907.

*Findings of Fact by Master in Chancery.  Conclusiveness of Same.  Unfair
Competition.  Infringement of Trade Marks.  Accounting.  Ascertain-
ment of Profits and Losses.  Rules relating to.*

1.  Upon all questions of fact the finding of a master in chancery has all the·
weight of a jury verdict, not to be set aside or reversed unless the evidence
reported shows the finding to be clearly wrong.

2.  In taking an account of the profits made by the defendant in unlawful
competition with the plaintiff by infringement of the latter's trade-marks,
trade-name, etc., it is not to be assumed that all the profits of the defend-
ant in his business were through such unlawful competition, and a finding
by the master that certain profits were not so made will not be set aside in
the absence of convincing evidence to the contrary.

3.  Sales made by the defendant under a trade name resembling that of the
plaintiff to persons who knew the goods were manufactured by the defend-
ant, and also sales made to persons at a distance who had no knowledge of
the plaintiff's existence, cannot be assumed to be injurious to the plaintiff
if the goods themselves are not impressed with deceptive marks.

4.  In determining the profits made by a defendant corporation in unfair
competition with the plaintiff, it is ordinarily proper to include in the cost
of manufacture and sale reasonable sums paid in good faith, as salaries to
managing officers; but where such managing officers are practically the
corporation and are the parties really guilty of the unfair competition,
sums drawn by them as salaries should not be included in the cost of
manufacture and sale.

5.  In addition to the profits made by the defendant in unfair competition
with the plaintiff by the use of the latter's trade-marks, trade name, etc.,
the plaintiff may also recover for losses in his own business caused by such
unfair competition.  If such loss results partly from such unfair competi-
tion and partly from other causes independent of the defendant and his
acts, the plaintiff can recover only for so much of the loss as he shows to
have resulted from the defendant's unlawful acts.  It is not necessary,

however, for him to prove such loss, in separation from the rest, with precision or definiteness. It is sufficient for him to adduce enough evidence to enable the tribunal to make a reasonable probable estimate by the exercise of intelligent judgment.

6. If the master in chancery in such case rules that he cannot allow for any such loss because the evidence does not enable him to draw a definite line between the loss resulting from the unlawful acts of the defendant and that resulting from concurrent causes for which the defendant is not responsible, such ruling is erroneous as being too strict, and the case should be recommitted to him to make if possible, a reasonably probable estimate of such loss.

In equity. On report. Master's report re-committed.

Bill in equity. This cause has been before the Law Court once before and the decision and report of the same can be found in 100 Maine, 461, and reference to that report is made for a statement of the original contentions between the parties. After the opinion and decision in 100 Maine, 461, a decree for an injunction and an accounting was made, and the case committed to a master with instructions as stated in the present opinion. By the same decree the bill was dismissed without costs as to Ralph M. Lunn and John L. Reed who originally were made parties defendant. The master heard the parties and then made and filed his report. Both parties took exceptions to the report.

The cause then came on for hearing before a Justice of the Supreme Judicial Court "on the question of the acceptance of the report of the master, and the consideration of the exceptions of both parties thereto, and was argued by counsel. And thereupon, questions of law having arisen of sufficient importance to justify it, and the parties agreeing to it," the cause was "reported to the Law Court for its determination," with the following stipulations: "If the Law Court is of the opinion that the master's report should be accepted as it stands, a final decree is to be directed for the plaintiff accordingly. Otherwise the Law Court is to direct such orders and decrees as the rights of the parties require."

The case appears in the opinion.

*Oakes, Pulsifer & Ludden, and Enoch Foster,* for plaintiff.

*George C. Wing, George C. Wing, Jr., and White & Carter,* for defendant.

SITTING: EMERY, C. J., STROUT, SAVAGE, PEABODY, SPEAR, CORNISH, JJ.

EMERY, C. J.   There has been much litigation between these two shoe manufacturing corporations, culminating in an opinion and decision that the defendant, a newer corporation, was and had been unlawfully endeavoring to draw to itself the trade of the plaintiff, an older corporation, by using trade-marks more or less resembling those of the plaintiff, and by unfair competition through the use of a corporate name, bill heads, letter heads, etc., calculated to give the impression that it was the plaintiff corporation or its successor, or that its shoes were the product of the plaintiff corporation.   After the opinion and decision in 100 Maine, 461, a decree for an injunction and an accounting was made, and the case committed to a master with the following instructions among others:

a.   To take an accounting of all the profits of the business of the defendant corporation realized from the sale of shoes upon which was impressed the trade-mark of the Auburn-Lynn Shoe Co., or any similar trade-mark using the name "Auburn-Lynn," between July 9, 1903, and the date of the decree, Jan'y 15, 1906.

b.   To take an accounting of all the profits of the defendant's business during the same period resulting from the wrongful acts committed by the defendant company in unfair competition with the plaintiff through similarity of name, etc.

c.   To ascertain the amount of all such profits of both classes (a and b) during that period.

d.   To ascertain the damages sustained by the plaintiff resulting from the wrongful use by the defendant of the plaintiff's trade-marks, and from other wrongful acts committed by the defendant in unfair competition with the plaintiff during the same time.

Under this commission the master heard the parties, their evidence and arguments, examined their books and papers, and made to the court a report of his findings and conclusions under each head and covering all the matters committed to him, but he did not report the evidence except so far as recited in his report, nor was he requested to do so.   It was stipulated, however, that the facts found

by the Justice hearing the cause in the first instance, and those found by the Law Court on the appeal, (100 Maine, 461) should be considered as evidence reported. Each party filed exceptions to the report, and those exceptions and the whole question of the acceptance of the report were reported to the Law Court to direct such orders and decrees as the rights and duties of the parties require.

Upon all questions of fact the finding of the master has all the weight of a jury verdict, not to be set aside or reversed unless the evidence reported shows the finding to be clearly wrong. *Paul* v. *Frye*, 80 Maine, 26 ; *Tilghman* v. *Proctor*, 125 U. S. 136, 149. This principle is to be borne in mind in considering and determining questions of fact raised by the exceptions to the report.

Plaintiff's exceptions.

1. Upon recurring to the instructions to the master, it will be seen that he was to ascertain the damages resulting to the plaintiff from two sources : (1) the damages resulting from the wrongful use of the plaintiff's trade-marks, and (2) the damages resulting from the defendant's unfair competition in other ways. As to some of the sales of shoes made by the defendant during the period in question, from July 9, 1903, to Jan'y 15, 1906, the master refused to include the profits on those sales in his assessment of damages for the reason stated in his report, that "the evidence wholly fails to show any unfair competition or any ground for the inference that the plaintiff was injured thereby." To this finding and refusal the plaintiff excepted.

No evidence is adduced that any of the shoes in these particular transactions were so marked or advertised as to indicate that they were manufactured by the plaintiff. It is claimed, however, that the evidence does show that the defendant through all that period was persistently endeavoring by various unlawful devices, such as similarity of corporate name, of bill heads, letter heads, etc., to appropriate the plaintiff's customers, business and business reputation, &c., and hence that all its transactions during that time were at the expense of the plaintiff, and the profits on them should therefore be included in the damages.

The master considered this claim, and yet found that these particular transactions did not appear to be at the expense of, or in any way injurious to, the plaintiff. The transactions themselves are not stated, and since it was possible and even feasible for the defendant to sell some shoes of such kind and under such circumstances as not to affect injuriously the plaintiff's trade, the finding of the master is not shown to be clearly wrong. Granting the general fraudulent character, as to the plaintiff, of the defendant's business conduct, we should not assume that none of its business transactions were free from that fraud. The exception cannot be sustained.

2. The master also excluded from his computation of damages the profits on certain sales made by the defendant to local dealers in Lewiston and Auburn after the change of its name from "Auburn-Lynn Shoe Co.," to "Lunn & Lynn Shoe Co.," because of his finding as a fact that these local dealers knew that the shoes purchased by them were not the product of the plaintiff company. He also excluded the profits on sales made to parties who (as he affirmatively found) never had purchased any goods of the plaintiff and did not appear to have known of the plaintiff's existence. It does not appear that the shoes thus sold were impressed with any deceptive trade-mark.

The evidence before us is not sufficient to overcome the master's findings of fact as to these two classes of sales. Indeed, the plaintiff does not claim so much, but urges that nevertheless the profits on these sales also should be included in the computation of its damages on the ground that the sales were in pursuance of the defendant's fraudulent purpose condemned by the court, and were therefore unlawful, and also affected the market to the detriment of the plaintiff. But by the terms of his commission the master was not authorized to assess any punitive damages, but only such as were actually sustained by the plaintiff and resulted from the unlawful acts of the defendant in unfair competition. The burden was on the plaintiff to prove the fact that it sustained damage from those particular sales. The master reports, however, that there was no evidence that any purchasers, or the public, were misled by these particular sales, and no evidence is adduced that those sales crowded

out any sales the plaintiff could have made but for them. In the absence of such evidence, it should not be assumed that every sale by the defendant of shoes not impressed with a deceptive trademark deprived the plaintiff of a sale, or injured its reputation, or even narrowed its market. It should not be assumed that any purchaser of the defendant's shoes in these cases would have purchased shoes of the plaintiff if the defendant company had never existed. This exception also must be overruled.

3. The master had the task of ascertaining the defendant's profits on such sales as he did find to have been made by the defendant to the detriment of the plaintiff from unfair competition within the opinion of the court and his commission. The defendant presented a statement of its business compiled from its books by an expert accountant accompanied by copies of an actual inventory of shoes finished and in process, and of stock and merchandise on hand. The plaintiff also presented a statement compiled by its treasurer, also an expert accountant, from the defendant's books. This latter statement shows a much larger profit on the business than did the former statement. The master reported that the discrepancy was in the items of shoes and merchandise on hand, also that the defendant's inventory was correct and supported its statement. He thereupon found the profits to be as shown by the defendant's statement. The plaintiff excepted to this finding, but as neither statements nor inventory accompany the report of the case, we have not the evidence to show that the matter was clearly wrong in so finding.

Before considering further the exceptions by the plaintiff we take up the exception of the defendant viz:

The defendant corporation claimed that in determining its profits made in unfair competition with the plaintiff there should be included in the cost of manufacture and sale the sums paid as salaries for services to Mr. Lynn, its president and one of its three directors, and to Mr. Lunn, its treasurer and another of its three directors. These salaries were fixed by the board of directors, Lynn and Lunn being a majority thereof. The master declined to allow these salaries in reduction of profits, and the defendant excepted.

If the bill and the claims made under the bill were against Lynn and Lunn as a firm or partnership, it is clear that the value of their time, talent and services expended in wronging the plaintiff by unfair competition should not be deducted from the plaintiff's damages. To do so would compel the plaintiff to pay them for wronging it. *Callaghan* v. *Myers*, 128 U. S. 617. But the counsel for the defendant corporation claims that Lynn and Lunn were merely its servants, that the sums paid them for carrying on the business must have been paid to other servants if not to them, and hence were a necessary and legitimate part of the cost. *Rubber Co.* v. *Goodyear*, 9 Wall. 788, is cited, where the master allowed as part of the cost of the infringing goods "the usual salaries of managing officers." If Lynn and Lunn were nothing more than servants, or even managing officers of the corporation acting under the directors, and had no other connections with the wrongs done the plaintiff, there might be some force in the argument. But the record before us discloses that in fact the corporation was practically the servant of Lynn and Lunn, not they its servants. They organized it, directed it, set it and kept it in unfair competition with the plaintiff. The wrong to the plaintiff was conceived, brought forth and nurtured by them. Whether they wrought the wrong as individuals, or as a partnership, or as a corporation, they were the real wrong doers. The court should penetrate through the form to the substance. The exception must be overruled.

Returning to the plaintiff's exceptions: The master included in his assessment of damages sustained by the plaintiff resulting from the wrongful acts of the defendant in its unfair competition, the profits made by the defendant on goods manufactured and sold by it in what the master found to be unfair competition with the plaintiff during the period named from July 9, 1903, to Jan'y 15, 1906. He further found at the request of the plaintiff that during the same period the plaintiff made no profit but suffered a loss on the product of its own factories, and that this loss was attributable to an interruption of the plaintiff's business during that time. He found that this interruption of business was caused partly by the

plaintiff's own acts and omissions, partly by other events for which the defendant company was not responsible, and partly by acts of the defendant.

He says in his report "By interruption of the plaintiff's business, I refer to the succession of events breaking in upon and affecting the plaintiff's business immediately prior to the organization of the defendant corporation and continuing until January 15, 1906, including the discharge of Mr. Lynn, the discharge of Mr. Lunn, Mr. Reed and other employees from the service of the plaintiff, the change in the plaintiff in the method of selling its goods, and the acts wrongful and otherwise of the defendant corporation in connection with the establishment and conduct of its business." He further reported that no evidence was submitted to him by which he could determine how much of his loss was attributable to the wrongful acts of the defendant, and for that reason did not include any of that loss in his assessment of damages. To this the plaintiff excepted.

The plaintiff claims that if it be impossible to determine how much of this loss resulted from the wrongful acts of the defendant, it should be charged with the whole loss as it, the defendant, appeared to be the only wrong doer in the premises. This contention cannot be sustained. Even a wrong doer is responsible only for the damages he causes, for the damages resulting naturally from his acts either directly, or from forces he releases and sets in motion by his wrongful acts. For damages sustained concurrently, at and through the same period of time, from acts or events of which the wrong doer is neither the cause nor the 'causa causans,' he is not responsible. If the plaintiff fails to furnish evidence affording some basis for an intelligent judgment, for at least a probable estimate as to how much of his damage resulted from the wrongful acts of the defendant, he fails to prove a necessary element in his case. It is for the plaintiff to prove the resulting damages as well as the wrongful act. They are not to be determined by haphazard guess, as by throw of dice.

It is not necessary, however, for the plaintiff in such case to prove the resulting damages in separation from other damages with

mathematical certainty or anything like it. He is not to be held to precision, to the exact pound, neither more nor less, nor even to show a distinct separation in time and circumstance. It is enough if he furnishes evidence upon which the tribunal can make a reasonably probable estimate through the exercise of intelligent judgment. Mere difficulty in making such an estimate does not authorize the tribunal to turn the plaintiff away without any damages. Of course in a given case the estimate may be too large or too small, as it may be and undoubtedly often is in that large class of cases in which damages cannot be calculated but necessarily have to be estimated. Certainty, precision is undoubtedly very desirable in the assessment of damages in such cases, but it is practically unattainable, and there is less danger on injustice in awarding judgment upon reasonably intelligent estimates than in refusing it wholly. See *Allison* v. *Chandler*, 11 Mich. at p. 554.

In connection with his report that there was no evidence from which he could determine how much of the loss in question was attributable to the defendant's wrongful acts, the master stated that he construed his commission as limiting him in the assessment of damages to such damages as he could find resulted "solely" from the defendant's wrongful acts. If under that construction, he sought to make a probable, intelligent estimate without insisting on certainty, to reach an approximately fair apportionment between the defendant's wrongful act and other independent causes of the damage without insisting on precision and found even that impossible, his report would have to be accepted as not enough appears to show that he was unmistakably wrong in such a conclusion.

A majority of the Justices, however, are of the opinion that the master had in his mind as shown by his language a more narrow and strict construction of his commission, that he understood he was to find the amount of such damages only as were caused by the defendant's wrong doing, separable and distinct in time and circumstance from other independent causes, that he was to find a definite, distinct line of cleavage between the damages resulting from the defendant's wrongful acts and those resulting from other, perhaps concurrent, but independent causes.

It follows from all the foregoing that the report should be re-committed to the master, solely, however, for further hearing and report upon the question of what damages, if any, should be awarded to the plaintiff for the losses in its own business, in the production and sale of its own goods, caused by the wrongful acts of the defendant. As in the opinion of a majority of the Justices this question was before considered and determined upon a too narrow construction of his commission, the master should give a·further hearing both of evidence and argument to the parties upon the question submitted and make if possible a reasonably probable estimate of the damages recoverable according to the principles enunciated in this opinion.

*So ordered.*