[No. 33111. Department Two. September 1, 1955.]

GEORGE F. LEMAINE et al., *Appellants*, v. BUFORD V. SEALS, JR., et al., *Respondents and Cross-appellants*.[1]

[1]Reported in 287 P. (2d) 305.

*Lenihan & Ivers,* for appellants.

*Merle D. Cohn,* for respondents and cross-appellants.

HILL, J.—The plaintiffs, George F. LeMaine and Donald W. Wallace, allege damages, actual and potential, to their business by the actions of Buford V. Seals, Jr., their former partner, and the other named defendants (Seals' wife, Robert A. Keene and John E. Keene and their respective wives, and Buford Enterprises, Inc.) and seek damages and

injunctive relief. All except a portion of the fourth of the five causes of action set forth in the complaint were dismissed, and the plaintiffs appeal. From the measure of relief granted the plaintiffs on the fourth cause of action, the defendants cross-appeal. To avoid confusion, we shall refer to the parties as plaintiffs and defendants.

The plaintiffs and defendant Seals became partners in 1946, the last and best known name of the partnership being "The 3 G.I.'s." They started dealing exclusively in war surplus materials but were soon handling other merchandise also, and in time the so-called "civilian" merchandise became predominant.

Their advertising was unusual and effective, and centered around the partners individually as "George," "Don," and "Buford" and their caricatures. The caricatures and other drawings were done for them by artists employed or recommended by the agency which handled their advertising from December, 1946, until August, 1948. Defendants Robert A. Keene and John E. Keene, as copartners, operated that agency.

Defendant Seals left the partnership as of November 1, 1948, under the terms of a dissolution agreement dated September 15, 1948, and a supplemental agreement dated December 7, 1948. By these dissolution agreements, the plaintiffs retained the right to the name "The 3 G.I.'s" and to use the name "Buford" and the caricatures of Seals which constituted part of their trademark. Seals was to have the right to engage in any business or occupation that would not compete with the business of the partnership. He agreed not to engage in any capacity whatsoever in a general retail merchandising business of the same nature as that operated by the remaining partners within the cities of Seattle and Portland, within a radius of three miles of any of the retail stores then operated by the partnership. Specific provisions of these dissolution agreements will be considered hereinafter, as they are decisive of many of the issues raised in this litigation.

Subsequent to leaving the partnership, Seals kept in touch with the Keenes, and the three of them finally "evolved"

the idea of a retail center in the nature of a market, to be called "Buford's Farmers' Market." To implement that idea, a corporation was organized under the name "Buford Enterprises, Inc.," with Seals as principal stockholder and president. The corporation plans to erect a large market building (1726 feet by 120 feet) on a site which it has leased, and to provide ample parking space thereon. The corporation will then lease space to approximately 185 tenants, who will erect their own specialty shops within the market building. The corporation, through subsidiary corporations, will operate a grocery store and a service station on the property. At the time of trial, the service station was substantially completed and the first section of the large building, where the grocery store will be located, was forty per cent completed.

Lewis Nasmyth, an artist who worked for "The 3 G.I.'s" both before and after Seals left the partnership, is now employed by the defendant corporation and is responsible for the caricature and the lettering used by the defendant corporation which are the bases of some of the complaints urged by the plaintiffs.

Many of the fifty-one assignments of error made by the plaintiffs have little bearing on our basic problem of what relief, if any, the plaintiffs are entitled to on their various causes of action. Nineteen of the assignments of error are to the failure of the trial court to make certain findings of fact proposed by the plaintiffs.

The fact that the evidence on a certain point may be undisputed does not entitle a party to a finding of fact on that particular point. As we said in *Seattle Ass'n of Credit Men v. Green* (1954), 45 Wn. (2d) 139, 143, 273 P. (2d) 513:

"We find no merit in defendants' assignments of error to the failure of the court to enter findings of fact proposed by them. These proposals are either contrary to the weight of the evidence, or are not ultimate material facts. The court is not obliged to make findings in regard to every item of evidence in a case, but must make findings of the ultimate facts concerning all of the material issues. *Bowman v. Webster,* 42 Wn. (2d) 129, 134, 253 P. (2d) 934 (1953), and cases

cited. The findings here are sufficient to enable this court to review the issues upon appeal, and disclose what questions were decided, and the conclusions reached upon them, by the trial court. This satisfies the requirements of Rule of Superior Court 17, 34A Wn. (2d) 118, referred to in the last cited case."

We shall, in an effort to give adequate consideration to the basic problem to which we have referred, consider each of the five causes of action and the plaintiffs' rights thereunder on the basis of the evidence applicable thereto, rather than take the time and space to discuss each assignment of error.

The first cause of action is for damages in the amount of one hundred thousand dollars against the defendants for appropriating to their own use

". . . the name 'Buford' and the cartoon, caricature and symbol depicting and representing 'Buford', and the distinctive type, design and lettering thereof . . ."

which are alleged to be a

". . . substantial and primary part of the good will and trade name of the partnership known as 'Veterans Sales Outlet', 'The 3 G.I.'s' and 'George, Don and Buford'. . . ."

The fifth cause of action is also for damages in the amount of one hundred thousand dollars. It is alleged therein that the defendants conspired, orally and by written agreement, to injure and defraud the plaintiffs by causing violation of certain contracts between Seals and the plaintiffs (the partnership agreement of July 9, 1947, and the dissolution agreements of September 15 and December 7, 1948), and by appropriating to their own business "the label, trademark, trade name, term, device, design, form of advertisement, lettering, type, cartoon, caricature and symbol" which belong to the plaintiffs.

The plaintiffs attempted to prove their damages by introducing evidence that the total cost of their advertising to June 30, 1953, was $134,335.39. (This figure was compiled from income-tax returns.) They argued that "Buford" was a dominant feature of that advertising, and that the activities of the defendants had injured them in the amount of one hundred thousand dollars.

They also showed that the defendants had placed a valuation of fifteen thousand dollars on their trade name, "Buford's Farmers' Market," in the financial statement furnished when they applied for a license authorizing them to sell stock and securities of the defendant corporation, Buford Enterprises, Inc. The plaintiffs argued that this is the value placed by the defendants on the name "Buford," to the exclusive use of which the plaintiffs allege they are entitled, and hence they have been damaged in at least that amount.

The trial court dismissed these two causes of action at the close of the plaintiffs' case, because no damages had been shown.

Damages resulting from the type of activities alleged by the plaintiffs in these two causes of action have always been recognized as difficult of proof. A statement of this difficulty appears in *W. R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co.* (1907), 103 Me. 334, 341, 69 Atl. 569:

"If the plaintiff fails to furnish evidence affording some basis for an intelligent judgment, for at least a probable estimate as to how much of his damage resulted from the wrongful acts of the defendant, he fails to prove a necessary element in his case. It is for the plaintiff to prove the resulting damages as well as the wrongful act. They are not to be determined by haphazard guess, as by throw of dice.

"It is not necessary, however, for the plaintiff in such case to prove the resulting damages in separation from other damages with mathematical certainty or anything like it. He is not to be held to precision, to the exact pound, neither more nor less, nor even to show a distinct separation in time and circumstance. It is enough if he furnishes evidence upon which the tribunal can make a reasonably probable estimate through the exercise of intelligent judgment. Mere difficulty in making such an estimate does not authorize the tribunal to turn the plaintiff away without any damages. Of course in a given case the estimate may be too large or too small, as it may be and undoubtedly often is in that large class of cases in which damages cannot be calculated but necessarily have to be estimated. Certainly, precision is undoubtedly very desirable in the assessment of damages in such cases, but it is practically unattainable, and there is less danger on [*sic*] injustice in awarding judgment upon reasonably intelligent estimates than in refusing it wholly."

See *Eno v. Prime Mfg. Co.* (1943), 314 Mass. 686, 50 N. E. (2d) 401; *Hygienic Products Co. v. Judson-Dunaway Corp.* (1948), 81 F. Supp. 935; 2 Nims, Unfair Competition & Trade-marks (4th ed.) 1336, § 420; 4 Callman, Unfair Competition & Trade-marks (2d ed.) 1881, § 89.3.

■ In the *Hygienic Products* case, *supra*, it is emphasized that "The court must be furnished with some factual basis in order to formulate an award." The evidence in the present case does not supply that factual basis, nor does it furnish a basis for a "reasonably intelligent estimate" as to the damages, if any, sustained by the plaintiffs on the first and fifth causes of action. Lacking these, the trial court did not err in entering the order of dismissal as to these two causes of action at the conclusion of the plaintiffs' case.

We cannot agree that the plaintiffs had acquired a right to the exclusive use of the name "Buford"; in fact, Seals has the right to the use of the name, with various restrictions thereon in accordance with the dissolution agreements.

Further, the valuation of fifteen thousand dollars was not placed on the name "Buford" but on the name "Buford's Farmers' Market." The basis of that valuation is explained by the testimony of Leonard J. Hayes, securities administrator for the state department of licenses, who said:

"The trade name to us . . . means that there has been certain work accomplished. Perhaps they have negotiated contracts; they have approved patents or negotiated outlets, sales outlets for a potential product produced. It means the work behind all of it, getting an organization together, the promotional aspect."

Although the prayer of their complaint in the fifth cause of action is only for damages, the plaintiffs urge that their fifth cause of action is also to enjoin the defendants from proceeding with their alleged conspiracy, and that in this aspect the cause of action should not have been dismissed. On that point, the defendants argued at the close of the plaintiffs' case that the fifth cause of action should be dismissed for the additional reason of failure to prove the essential elements of a conspiracy.

The plaintiffs allege that the Keenes conspired with Seals prior to January 23, 1953, to bring about a breach of the dissolution agreements, and that a contract of January 23, 1953, between Seals and the Keenes was in furtherance of that conspiracy. (There was no corporation until January 26, 1953.)

We do not see how the Keenes could have conspired with Seals to breach agreements of which only Seals had knowledge. Of a somewhat similar situation, we said in *Baun v. Lumber & Sawmill Workers Union* (1955), 46 Wn. (2d) 645, 649, 284 P. (2d) 275:

"It is our view that there can be no conspiracy to deprive the plaintiff of the benefit of a promise, when it is conceded that only one of the alleged conspirators had any knowledge thereof."

While it is not conceded here that the Keenes did not know of the dissolution agreements, there is no proof that they did, and their own testimony is that they did not know of them until March 18, 1953.

We are satisfied that the trial court could and should have dismissed the fifth cause of action on the ground that no conspiracy had been established. While the court did not dismiss that cause of action on that ground, it has frequently been held that we will sustain the action of the trial court on a theory different from that adopted by it where such theory was actually presented to the court at the time of trial. *Senior Citizens League v. Department of Social Security* (1951), 38 Wn. (2d) 142, 228 P. (2d) 478; *Latimer v. Western Machinery Exch.* (1952), 40 Wn. (2d) 155, 241 P. (2d) 923, reversed on another point on rehearing, 42 Wn. (2d) 756, 259 P. (2d) 623.

By the second, third, and fourth causes of action, injunctions are sought. When relief by temporary or permanent injunction is sought, the one asking such relief must show a well-grounded fear of invasion of a right, and the acts complained of must establish an actual and substantial injury or an affirmative prospect thereof. *King County v. Port of Seattle* (1950), 37 Wn. (2d) 338, 223 P. (2d) 834.

With this standard in mind, we will examine these three causes of action.

The second cause of action seeks to enjoin the breach of a portion of the supplemental dissolution agreement of December 7, 1948, wherein Seals agreed that he would

" . . . not engage in any capacity whatsoever in a general retail merchandising business of the same nature as that now operated by second parties [plaintiffs] within the cities of Seattle, Washington, and Portland, Oregon, within a radius of three miles of any of the retail stores now operated . . ."

by the plaintiffs in those cities. It is conceded that the plaintiffs were at that time operating a retail store in Seattle at 2523 Rainier avenue.

The defendants urge that the site of Buford's Farmers' Market is at least 3.6 miles from the store at 2523 Rainier avenue by the closest driving distance. It was established, however, that by straight line measurement it is 2.937 miles between the two locations. *Mead v. Anton* (1949), 33 Wn. (2d) 741, 207 P. (2d) 227, 10 A. L. R. (2d) 588, is decisive of the proposition that "radius" means radius, and it follows that Buford's Farmers' Market is within the prohibited area.

There remains, however, the question of whether Buford's Farmers' Market is "a general retail merchandising business of the same nature as that now operated" by the plaintiffs at the time of the dissolution agreements.

The agreement of December 7, 1948, originally provided that Seals would "not engage in any capacity whatsoever in a general merchandising business of the same nature or similar to that now operated" by the plaintiffs, within the prohibited areas. The parties, by interlineation, added the word "retail" after the word "general," and struck out the words "or similar to" and substituted the word "as," apparently intending to give Seals more leeway in his subsequent operations.

The whole plan of operation is markedly different from that of "The 3 G.I.'s," although it is conceded that most of the items sold by "The 3 G.I.'s" would also be sold in the

booths or stores leased to other persons in the market. The trial court found that:

"This is a new type of market. In this enterprise various businesses, over a hundred in number, are to be carried on by tenants under leases with Buford Enterprises, Inc. being the lessor; that no 'G.I.' or surplus goods will be sold; that most of the other wares now sold by 'The Three G.I.'s' will be sold in one stall or another; that Buford Enterprises, Inc. will own and operate the large grocery store within the market and the service station connected to the market; that groceries or gas are not sold by 'The Three G.I.'s'."

(After "groceries," the trial court might have added "except canned sardines and tuna.")

The trial court also found that

" . . . the planned business of Buford Enterprises, Inc., and the defendants to be known as Buford's Farmers' Market is not of the same nature or even similar to, that business as operated by The Three G.I.'s in December of 1948; the business of the defendants as planned under the title of 'Buford's Farmers' Market' is not of the same nature, or even similar to, that business now presently operated by The Three G.I.'s."

(The trial court here refers to both the original and the changed wording of the December 7th agreement to which we have heretofore made reference.)

█ This is one of the not unusual situations where the finding of the ultimate fact (in the instant case, that the one business is not the same as the other) is, in a sense, a conclusion drawn from the evidence. These findings are supported by competent evidence, and certainly the evidence does not preponderate against them. We would arrive at the same conclusion as to the ultimate fact. Based upon these findings, the judgment of the trial court dismissing the second cause of action must be affirmed.

By the third cause of action, the plaintiffs seek to enjoin the use of the name "Buford" by the defendants. Plaintiffs urge that the use of the name "Buford" by the defendants in connection with their business and in advertising that business is a violation of certain portions of the partnership agreement and the dissolution agreements.

As we read the agreements, defendant Seals is not prohibited from using the name "Buford" in his own business ventures, but he agreed not to use the name in the advertising of any business in which he might engage *in such a manner as would indicate to the general public that he is the Buford who was formerly a partner in the business of "The 3 G.I.'s"*; and he agreed that the plaintiffs should have the exclusive right to the use of the name "Buford" in conjunction with the names "George" and "Don" or when used in the advertising of their business. The evidence of any breach of that portion of the agreements is very limited and consists of three items:

(a) An article in The Seattle Times of May 24, 1953, in which it was stated, with reference to the plants of the defendants:

"The building will be constructed for Buford Enterprises, Inc., of which Buford V. Seals, Jr., is president. Seals formerly was associated with the Three G.I.'s."

There is no showing that the defendants were in any way responsible for that news story. When they reprinted the article for advertising purposes, they deleted the last sentence.

(b) An article in the Seattle Guide of May 29, 1953, in which it was stated: "Knowing Buford (formerly of the three G.I.'s) and Bob, the local folk can look for some unusual ideas when they try shopping." William C. Speidel, Jr., publisher of the Seattle Guide, who wrote the article, testified that the reference to Seals as a former associate of "The 3 G.I.'s" was done strictly on his own responsibility and not at the request of Robert Keene, who gave him the information concerning the proposed market.

(c) Two pages from an application submitted by the defendants to the department of licenses to meet certain of its requirements. This material is captioned "Conception and Plan of Operation of Buford's Farmers' Market," and begins:

"Mr. Buford Seals, Jr. was the sponsor of a well-known enterprise which made a spectacular job of selling war surplus materials at the end of the second World War. In 1948

Mr. Seals sold his interest in this operation and since that date has been giving active time and thought in planning a proposed market to be known as Buford's Farmers' Market."

It appears that one hundred copies of this were made available to prospective investors.

The trial court made no reference to this statement in its findings, but disposed of it in its oral opinion in these words:

"In one document which was required to be filed with the license department, he did mention that was his former business, but it is necessary in that respect to so identify himself with the Department of Licenses of the State of Washington. But that in no sense is a violation of that provision of the agreement in regard to advertising his business."

The trial court found:

"That without any action on the part of the defendants there have been some news articles in regard to the starting of the new enterprise 'Buford's Farmers' Market' that identify Buford V. Seals as the 'Buford' who was one of the former G.I.'s."

■■■ The trial court also found, in effect, that, aside from the caricatures which will be hereinafter described, the defendants did not use the name "Buford" in such a manner as would indicate to the general public that he is a former member of "The 3 G.I.'s." We are unable to say that the evidence preponderates against that finding.

The plaintiffs urge that the name "Buford," used alone, is part of the trade name referred to in that paragraph of the July 9, 1947, partnership agreement reading

". . . any partner or partners continuing in the business of the partnership after such dissolution shall be the exclusive owner or owners of said good will and trade name."

The dissolution agreements clearly had a different intent. Seals was to be permitted a restricted use of the name "Buford" in the advertising of any business (subject, also, to certain restrictions) in which he might engage.

Crane on Partnership (2d ed.) 399, § 74, states: "The parties may agree upon terms of dissolution differing from

those originally provided in partnership articles." See *Guenther v. Kutz* (1921), 270 Pa. 144, 112 Atl. 919. We must therefore look to the dissolution agreements in the case of any conflict between them and the partnership agreement with reference to the use of the name. And it is our view that, if the provision quoted from the partnership agreement was intended to provide for exclusive ownership of the name "Buford" by the partners remaining in the business, it was modified by the dissolution agreements subsequently made. We conclude that the trial court committed no error in dismissing the third cause of action.

In the consideration to follow of the fourth cause of action, it should be noted that the third cause of action involves the right to the use of the name "Buford" apart from any caricatures. The trial court found that,

" . . . leaving out said cartooning and caricature of 'Buford', the general public would not be advised, or any indication held out to the public, that the promoter of the Buford's Farmers' Market is the Buford who was formerly a partner in the business of The Three G.I.'s or the Veterans' Sales Outlet."

The fourth cause of action alleges the registration of a trademark and that, by the partnership agreement and the dissolution agreements,

" . . . the said label, trademark, device, terms, design, form of advertisement, lettering, type, cartoons, caricatures, symbols, names, and each of them, and each and every part thereof, and the right to the use thereof, became, has since been, and now is the sole and exclusive property of the plaintiffs."

It is also alleged that the defendants have appropriated and used

" . . . the name, label, trademark, term, device design, form of advertisement lettering, type, cartoon, caricature and symbol . . . in the identical form of said trademark of plaintiffs . . . or so near in resemblance thereto as to be calculated and intended by said defendants . . . to deceive the general public in Seattle and King County."

The trial court found that the evidence did not support these allegations except in one respect, that being:

"The use of the caricature as used in connection with the name 'Buford' and as used by the defendants in advertising their enterprise known as 'Buford's Farmers' Market' is the only violation of any of the aforementioned agreements or any property rights of the plaintiffs, it being the second paragraph of the supplemental agreement of December 7, 1948."

The second paragraph of the dissolution agreement of December 7, 1948, referred to in the finding, reads as follows:

"First party [defendant Seals] does FURTHER AGREE that he will not use the name 'Buford' in the advertising of any business in which he may engage in such manner as will indicate to the general public that he is the 'Buford' who was formerly a partner in the business of the 3 GI's or Veterans' Sales Outlet."

A decree predicated upon that finding and enjoining the use of any caricature in connection with the name "Buford" was entered in the fourth cause of action. The plaintiffs appeal from the portion of the decree granting the injunction because they believe it should be broader and more inclusive. The defendants cross-appeal because they do not believe that the use of the caricature and the name together violates the dissolution agreements. The plaintiffs also insist that the rights they possess under and by virtue of their trademark have been violated.

The trial court found that the defendants had not violated any property rights possessed by the plaintiffs by virtue of their trademark. We are satisfied that the evidence does not preponderate against this finding, and we, too, conclude that there has been no violation of plaintiffs' trademark.

We are satisfied that the evidence does not preponderate against the findings of the trial court on any of the issues of fact on which the plaintiffs base their appeal, and that the trial court's judgment should be affirmed on each cause of action on the plaintiffs' appeal.

On their cross-appeal, the defendants urge that their

demurrer to the fourth cause of action should have been sustained on four grounds.

All grounds in this demurrer except that there were not sufficient facts to constitute a cause of action, were waived when the defendants elected not to stand on their demurrer but to answer the complaint. *Benjamin v. Ernst* (1914), 83 Wash. 59, 145 Pac. 79; *Pacific Tel. & Tel. Co. v. State Tax Comm.* (1935), 180 Wash. 673, 42 P. (2d) 420. See, also, RCW 4.32.190 [*cf.* Rem. Rev. Stat., § 263]. Measured by the standards laid down in *Mill & Logging Supply Co. v. West Tenino Lbr. Co.* (1954), 44 Wn. (2d) 102, 265 P. (2d) 807, and cases there cited, sufficient facts to constitute a cause of action were stated, and the demurrer to the fourth cause of action was properly overruled.

Contention was made in the argument on the demurrer that the injunctive relief could not run against the corporation or against the Keenes, because they were not parties to the agreements between the plaintiffs and defendant Seals.

In *Lyle v. Haskins* (1946), 24 Wn. (2d) 883, 901, 168 P. (2d) 797, we answered such a contention by saying:

"The rule that a stranger to a covenant may properly be enjoined from aiding and assisting the covenanter in violating his covenant is supported by an overwhelming weight of authority."

See, also, *Madison v. LaSene* (1954), 44 Wn. (2d) 546, 268 P. (2d) 1006.

As the evidence establishes that the corporation is an alter ego of Seals, it should also be enjoined. *Arctic Dairy Co. v. Winans* (1934), 267 Mich. 80, 255 N. W. 290, 94 A. L. R. 334.

The challenge to the sufficiency of the evidence at the conclusion of plaintiffs' case on the second, third, and fourth causes of action was waived by the defendants when they proceeded with evidence on their own behalf. *Minch v. Local Union No. 370, International Union of Operating Engineers* (1953), 44 Wn. (2d) 15, 265 P. (2d) 286; *McDonald v. Wockner* (1954), 44 Wn. (2d) 261, 267 P. (2d) 97.

 The trial court found that such a caricature as exhibit 60, in conjunction with the name "Buford," would indicate to the general public that he is the Buford who was a partner of "The 3 G.I.'s." The defendants insist that, since no member of the general public testified on that point, there is no evidence to sustain such a finding, and that the court took judicial notice of something that had to be proved.

· Courts are often presented, in trademark infringement cases, with the problem of what names and caricatures will indicate to the general public. While the quotations which follow refer to that type of cases, we believe that they are likewise applicable to the present situation, where the court's injunction against the defendants is premised upon specific contractual agreements between the plaintiffs and defendant Seals.

In 3 Callman, Unfair Competition & Trade-marks (2d ed.) 1570, § 82.3(a), the necessity of action by the courts to prevent deception is stressed, and it is stated:

"Inability to provide the court with direct evidence of such confusion does not defeat the plaintiff's case, if he brings his action before substantial business operations have begun; in such a case, it is still an open question whether subsequent experience might not demonstrate that the defendant's mark will actually work a deception upon the public. If the plaintiff brings suit 'at once to nip, if he can, the process in the bud,' it may well be that the dispatch with which he acts preventatively insures against confusion."

That describes the situation presented here. The action was brought before the defendants had opened their market, and the plaintiffs are entitled to "nip in the bud" any violation of the agreement between them and defendant Seals.

The question is as to the sufficiency of the evidence to warrant the finding which the trial court made.

It is said that:

"The court should consider the mark 'as a whole and not dissected,' for the ordinary buyer does not stop to dissect the marks; if the latter is deceived, it is attributable to the mark as a totality, and not normally to any particular part of it. . . . The court is to be guided by its first impression, the value of which may be dissipated as soon as the

court assumes to analyze carefully the respective features of the marks." 3 Callman, Unfair Competition & Trademarks (2d ed.) 1378, § 81.1.

See, also, *Celanese Corp. of America v. E. I. duPont de Nemours & Co.* (1946), 154 F. (2d) 143, 145, where the court said:

"It is a matter of common knowledge that in the purchase of goods people generally do not stop to scrutinize marks nor retain a vivid recollection of their diversified features. Each of the contested marks, therefore, is to be considered in its entirety and viewed as the general public would view and remember it."

We are satisfied that the defendants themselves realized that the signboards with a caricature of a head, accompanied by the words "Buford's Coming," which they first placed on the property where the market is to be erected, were more than reminiscent of the advertising of "The 3 G.I.'s." They now emphasize that those signs are no longer used; that the caricature they intend to use is not just a head but a full-length cowboy character, and that the face does not resemble that of Buford as caricatured in "The 3 G.I.'s" advertising.

The test is not whether the defendants' caricature resembles the caricature of Buford used by "The 3 G.I.'s," but whether the combination of name and caricature identifies the person named as one of "The 3 G.I.'s" to the general public. A prominent proboscis is an outstanding characteristic of both George and Buford in "The 3 G.I.'s" caricatures— the former elongated, the latter bulbous. The dominant facial characteristic of the defendants' caricature, the nose, is the nose of George in "The 3 G.I.'s" caricatures, not that of Buford. One might say (paraphrasing a famous Biblical deception) that the defendants' caricature is the nose of George but the name of Buford. Other features of the defendants' caricature are also strongly reminiscent of "The 3 G.I.'s" caricatures. We are satisfied that a caricature containing a combination of features closely resembling those of "The 3 G.I.'s" caricatures (and it makes no difference which one), accompanied by the name "Buford," would identify

the person named as one of "The 3 G.I.'s" in the minds of the general public, despite the full-length figure and other differences elaborated upon by the defendants.

While we are satisfied that the evidence supports the finding of the trial court, we are of the opinion that the injunction entered, which would prevent the defendants from using any drawings caricaturing Buford in advertising Buford's Farmers' Market, should be modified to read:

" . . . the defendants are permanently enjoined and restrained from using any cartoon caricaturing Buford V. Seals as 'Buford' in advertising Buford's Farmers' Market which features a physical characteristic that is a dominant or distinctive feature of 'George,' 'Don,' or 'Buford' in the advertising of 'The 3 G.I.'s,' or which would otherwise indicate to the general public that he is the Buford who was formerly a partner in the business of 'The 3 G.I.'s.' "

Affirmed as modified. Neither party will recover costs in this court.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

---

November 2, 1955. Petition for rehearing denied.